114 F.3d 1193
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CONSOLIDATED TRANSPORTATION SERVICES, INC. (SAIPAN);
Consolidated Transportation Services, Inc. (Guam),
Plaintiffs-Appellants,
v.
SAIPAN STEVEDORE COMPANY, INC.; National Pacific Insurance,
Inc., Defendants-Appellees.
 No. 96-15353.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1997.
Decided May 29, 1997.
 
 Before: NORRIS, HALL, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Consolidated Transportation Services, Inc. (CTSI) appeals the district court's grant of partial summary judgment to Saipan Stevedore Company (SaiSteve), pursuant to the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. app. § 1304(5), limiting SaiSteve's liability to $500. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]
 
 Background
 
 3
 CTSI, a freight consolidator, contracted with Seabridge Micronesia, Inc. (Seabridge), a commercial marine carrier, to carry the goods of CTSI's shipper-customers from Guam to Saipan. Seabridge had a contract with SaiSteve, a stevedore, to unload the cargo at the Saipan port. While SaiSteve was unloading CTSI's container from Seabridge's barge, the container broke, and some of the cargo fell into the lagoon.
 
 
 4
 Under Seabridge's bill of lading, COGSA governs the parties' relationship and allows Seabridge (and thus SaiSteve) to limit its liability for damage to cargo to $500 per package.[2] The bill of lading also stated that there was one container being shipped and that the shipper had the option of paying a higher rate in order to avoid the limitation. The district court concluded that: (1) CTSI had been given a fair opportunity to opt out of the liability limitation and had not done so; (2) SaiSteve had not committed an unreasonable deviation from the contract of carriage which would deprive it of the limitation; and (3) the bill of lading was unambiguous.
 
 Discussion[3]
 
 5
 Under COGSA, a carrier may limit its liability to $500 per package if the shipper is given a fair opportunity to opt out of the limitation by declaring an excess value and paying a higher rate. 46 U.S.C. app. § 1304(5); Mori Seiki U.S.A., Inc. v. M.V. Alligator Triumph, 990 F.2d 444, 448 (9th Cir.1993); Nemeth v. General S.S. Corp., 694 F.2d 609, 611 (9th Cir.1982). An express, legible declaration of the limitation and the opportunity to opt out, as was found in the Seabridge bill of lading, constitutes prima facie evidence that CTSI was given a fair opportunity to avoid the limitation, shifting the burden to CTSI to prove that it was denied such an opportunity. Institute of London Underwriters v. Sea-Land Serv., Inc., 881 F.2d 761, 766 (9th Cir.1989). Here, CTSI failed to present any evidence that it was denied an opportunity to opt out.
 
 
 6
 Instead, CTSI argues that the limitation does not apply because: (1) the clause is invalid because it is either ambiguous or defective; (2) even if the clause is valid, SaiSteve's unreasonable deviation from the contract of carriage deprives it of the limitation; and (3) SaiSteve's liability should be $500 for each of the sixty-nine packages inside the container.
 
 I. Validity of Limitation Clause
 
 7
 CTSI correctly asserts that a bill of lading is an adhesion contract whose ambiguities must be construed against the carrier. Mori Seiki, 990 F.2d at 448; London Underwriters, 881 F.2d at 767. However, there are no ambiguities to be construed against SaiSteve. As the district court noted, the bill of lading clearly stated that: (1) COGSA applied; (2) liability was limited to $500 per package, unless CTSI paid a higher rate; (3) this limitation applied to the stevedore; and (4) there was only one container being shipped, with no indication of the number of packages within the container.
 
 
 8
 Nor does the bill of lading suffer from any of the deficiencies which have rendered limitation clauses invalid in other cases. The bill of lading does not merely incorporate COGSA, but it expressly recites the liability limitation and the opportunity to opt out. See Komatsu, Ltd. v. States S.S. Co., 674 F.2d 806, 809-10 (9th Cir.1982). It is legible. See Nemeth, 694 F.2d at 611-12. It does not attempt to limit liability below the amount permitted by COGSA. See Tessler Bros. (B.C.) Ltd. v. Italpacific Line, 494 F.2d 438, 443 n. 6 (9th Cir.1974) (interpreting COGSA § 1303(8) as meaning that, "for example, parties cannot stipulate that they will never be liable for more than $400."). Finally, it does not contain any declaration of the number of packages inside the container. See All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1433 (9th Cir.1993), cert. denied, 510 U.S. 1194 (1994) (holding that the $500 per package limitation did not apply to the entire container, which contained numerous packages, because the bill of lading clearly disclosed the number of packages inside).
 
 
 9
 The limitation clause, being neither ambiguous nor defective, thus validly limits SaiSteve's liability to $500 for the single, declared container.
 
 II. Unreasonable Deviation
 
 10
 If a carrier commits an unreasonable deviation from the contract of carriage, it is deprived of the $500 liability limitation. Amdahl, 65 F.3d at 146-47. An unreasonable deviation is a serious departure from the contract of carriage; mere negligence in the handling of cargo does not constitute a deviation. Nemeth, 694 F.2d at 613.
 
 
 11
 CTSI argues that SaiSteve committed such an unreasonable deviation from the contract of carriage. CTSI contends that SaiSteve's use of a sling device, as opposed to a spreader device, to lift the container from the ship breached industry custom and greatly increased the risk of damage to the cargo, and that SaiSteve failed to secure the dock after salvaging the cargo, resulting in the cargo being pilfered.
 
 
 12
 While CTSI presented two affidavits in support of its contention that use of a sling device to unload its container breached industry custom, it failed to show how this could lead to a finding of anything other than mere negligence, which does not constitute an unreasonable deviation.
 
 
 13
 Further, the bill of lading did not specify the method of unloading. Since the contract contained no terms governing the method of unloading, SaiSteve's use of a sling device, though perhaps negligent, was not a deviation from the contract. The district court therefore properly concluded that SaiSteve's method of unloading the container was not an unreasonable deviation which would deprive SaiSteve of the COGSA limitation.
 
 
 14
 CTSI further asserts that SaiSteve's failure to secure the dock after employing divers to salvage the cargo was intentional conduct which should deprive SaiSteve of the protection of COGSA.[4] The only evidence in the record about this conduct was a statement by a CTSI employee that SaiSteve did not secure the area where the damaged cargo was located. Again, however, CTSI has failed to present evidence to support a finding of more than mere negligence. SaiSteve thus is not deprived of the $500 per package limitation provided by COGSA.
 
 
 15
 III. Liability for Each Package in the Container
 
 
 16
 Finally, CTSI argues that the district court erred in limiting SaiSteve's liability to $500 because the container actually contained sixty-nine separate packages. However, the bill of lading clearly listed only one container under the heading "NO. OF PKGS." The parties' designation of the number of packages on the bill of lading has been found to be determinative for the purposes of COGSA's limitation of liability. Travelers Indem. Co. v. Vessel Sam Houston, 26 F.3d 895, 901-02 (9th Cir.1994); All Pac. Trading, 7 F.3d at 1433.
 
 
 17
 There is no evidence that CTSI informed either Seabridge or SaiSteve of the number of packages within the container. Nor is there evidence that CTSI disputed the designation of one container on the bill of lading, or that it attempted in any way to increase the amount of Seabridge's or SaiSteve's liability. Contrary to CTSI's assertion, the description on the bill of lading of the cargo as "freight all kinds" did not put SaiSteve on notice that the container contained numerous packages. The district court thus did not err in limiting SaiSteve's liability to one package.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 After the grant of summary judgment on liability, the parties stipulated to the amount of damages and the district court entered a final judgment from which this appeal is taken
 
 
 [2]
 The limitation on liability was clearly extended to SaiSteve by a so-called Himalaya Clause in the bill of lading
 
 
 [3]
 A grant of partial summary judgment is reviewed de novo. Amdahl Corp. v. Profit Freight Sys., Inc., 65 F.3d 144, 146 (9th Cir.1995)
 
 
 [4]
 Both parties assume that the bill of lading continued to govern SaiSteve's obligation with respect to the goods while they were stored on the dock. Because this point is not contested, we assume the same